IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


DAVID E. HILL,                        :
                                      :
          Plaintiff                   :
                                      :
     v.                               :    CIVIL NO. 3:CV-11-1553
                                      :
LIEUTENANT SCAMPONE, ET AL.,          :    (Judge Conaboy)
                                      :
          Defendants                  :

_____

**MEMORANDUM**
**Background**

          David E. Hill (Plaintiff), an inmate presently confined at

the United States Penitentiary, Lewisburg, Pennsylvania (USP-

Lewisburg) initiated this Bivens[1]-type pro se civil rights action.

Service of the complaint was previously ordered.

          Named as Defendants are the following USP-Lewisburg

officials: Disciplinary Hearing Officer (DHO) K. Bittenbender;

Lieutenant C. Scampone; Paramedic B. Walls; Budget Analyst C.

Landis; Physician Assistant (PA) F. Alama; and Correctional

Officers (CO) C. Brininger, J. Hardy, B. Tharp, and E. Lindsey.

          Plaintiff alleges that on December 2, 2010, Lieutenant

Scampone came to his cell to inquire as to why Hill would not

_____

1.  Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,
403 U.S. 388 (1971). Bivens stands for the proposition that "a
citizen suffering a compensable injury to a constitutionally
protected interest could invoke the general federal question
jurisdiction of the district court to obtain an award of monetary
damages against the responsible federal official." Butz v.
Economou, 438 U.S. 478, 504 (1978)

agree to have Inmate Goodwin be his cell mate.  Scampone directed
Plaintiff "to cuff up."  Doc. 1, ¶ 13.  During that process and
despite Plaintiff's alleged compliant behavior, Defendants
Scampone, Tharp, Brininger, Lindsey, and other unidentified
officers physically assaulted Plaintiff without provocation.  The
assault included Hill being punched in the face, slammed to the
floor, and the use of pepper spray by Scampone.  See id., ¶ 13.

Hill claims that he suffered injuries including loosened
teeth, neck and back pain, and blurred vison as a result of the
attack.  Following the incident, Plaintiff states that he was
placed in ambulatory restraints which were applied too tightly for
twenty-four (24) hours causing additional injury.  During that
period Plaintiff adds that he could not eat, lay down, or use the
bathroom.  Hill was also issued an alleged false misconduct charge
as a result of the incident in which Tharp claimed that the
prisoner had charged towards his cell door as the officer unlocked
the cell.

It is next alleged that PA Alma refused to provide Hill with
treatment for his injuries.  On March 22, 2011, DHO Bittenbender
conducted a hearing on the misconduct charge.  Defendant Landis was
appointed as Plaintiff's staff representative.  According to the
Complaint, Landis, Tharp, Scampone, Lindsey and Hardy all made
false statement to the DHO which were improperly taken into
consideration and which resulted in a finding of guilt.  Plaintiff
seeks injunctive relief as well as compensatory and punitive
damages.

Defendants have responded to the Complaint by filing a motion to dismiss and for summary judgment.  <u>See</u> Doc. 13.  The opposed motion is ripe for consideration.

### Discussion

**Motion to Dismiss**

Defendants' pending dispositive motion is supported by evidentiary materials outside the pleadings.  Federal Rule of Civil Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleading are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials accompanying the Defendants' motion.  Thus, their motion will be treated as solely seeking summary judgment.  <u>See</u> <u>Latham v. United States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to dismiss has been framed alternatively as a motion for summary judgment such as in the present case, the alternative filing "is sufficient to place the parties on notice that summary judgment might be entered.")

**Summary Judgment**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at

trial." <u>Celotex</u>, 477 U.S. at 322-23.   "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" <u>Saldana</u>, 260 F.3d at 232 (quoting <u>Williams v. Borough of West Chester</u>, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Eleventh Amendment**

Defendants' initial argument contends that Plaintiff's action to the extent that it raises claims for monetary damages against them in their official capacities is barred by the Eleventh Amendment.  <u>See</u> Doc. 14, p. 7.

The United States is generally immune from suit absent an explicit waiver of sovereign immunity, <u>United States v. Mitchell</u>, 445 U.S. 535, 538 (1980).  This "immunity is jurisdictional in nature," <u>FDIC v. Meyer</u>, 510 U.S. 471, 475  (1994), and extends to government agencies and employees sued in their official capacities.  <u>Antol v. Perry</u>, 82 F.3d 1291, 1296 (3d Cir. 1996); <u>Chinchello v. Fenton</u>, 805 F. 2d 126, 130, n. 4 (3d Cir. 1986).

"Congress has not waived sovereign immunity for damages claims for constitutional violations." <u>Germosen v. Reno</u>, Civil No. 99-1268, slip op. at 13 (M.D. Pa. Sept. 20, 2000)(Vanaskie, C.J.). Therefore, entry of summary judgment in favor of the Defendants is appropriate to the extent that the Complaint asserts <u>Bivens</u> claims against them in their official capacities.

## **Excessive Force**

According to Defendants, on December 2, 2010 Hill was placed in a cell with Inmate Goodwin while both prisoners were in hand restraints.  When the prisoners refused to relinquish their hand restraints stating that they did not wish to live together, Lieutenant Scampone and CO Tharp responded.  Goodwin then complied with a directive by Scampone to relinquish his hand restraints and they were removed.  However, Goodwin allegedly refused to move away from the cell door wicket so that Hill's restraints could be removed.

After a discussion with the Operations Lieutenant it was decided that the two prisoners should be separated.  Goodwin's hand restraints were reapplied.  Hill was ordered to turn around and face the back of the cell.  When Officer Tharp proceeded to unlock the cell door Hill turned around and began to charge out of the cell door thrusting his body against Tharp.  The Plaintiff was grabbed by prison staff and taken to the ground.  One of the officers activated his body alarm in order to summon additional staff.  When Hill refused an order to cease his combative behavior he was sprayed in the face with a chemical agent by Scampone and became compliant.

Hill was then taken to a shower stall where a medical assessment was performed.  Due to his assaultive behavior, Plaintiff was placed in ambulatory restraints without incident. Medical records submitted by Defendants indicate that Plaintiff had trouble breathing after being sprayed with the chemical agent,

however, his condition improved after using his personal inhaler. It was also noted that Plaintiff suffered two (2) brush burn type abrasions on his back.

Defendants contend that entry of summary judgment is appropriate with respect to the excessive force allegations is appropriate because those claims "are completely unsupported by the record." Doc. 14, p. 13. They note that Hill's institutional medical records show that he had no sign of injury after the incident and his unsubstantiated allegations are insufficient to withstand summary judgment. Defendants also claim entitlement to qualified immunity.

A correctional officer's use of force in order to constitute cruel and unusual punishment, must involve the "unnecessary and wanton infliction of pain." Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and

7

sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant). As explained in Fuentes:

> Resolution of an Eighth Amendment claim therefore 'mandate[s] an inquiry into a prison official's state of mind.' Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. 'What is necessary to establish an "unnecessary and wanton infliction of pain. . ." varies according to the nature of the alleged constitutional violation.'

206 F.3d at 344.

In support of their summary judgment request, Defendants have submitted copies of statements made by Defendants Scampone, Tharp, Brinninger, Lindsey, and Hardy as well as Plumbing Supervisor C. Shuck immediately following the incident. None of those statements is in the form of an affidavit, declaration, or otherwise submitted under penalty of perjury.[2]

---

2. "[S]elf-serving testimony may be utilized by a party at summary judgment." Waldron v. SL Industries, 56 F.3d 491, 501 (3d Cir. 1995). However, Federal Rule of Civil Procedure 56(e) requires that affidavits submitted in support or opposition to a summary judgment motion be sworn or certified. Statements that fail to comply must be stricken. Tukesberry v. Midwest Transit, 822 F.
(continued...)

It is apparent to this Court that based upon an application of the factors announced in Brooks and Whitley to the record, there are clearly issues of material fact in dispute as to whether the actions taken by Defendants were an intentional sadistic attempt to inflict harm on Plaintiff or rather a good faith effort to diffuse a dangerous situation.  See Wilson v. Horn, 971 F. Supp. 943, 948 (E.D. Pa. 1997)(a plaintiff must establish that the force was applied maliciously and sadistically, instead of in good faith). There has been no competent evidence presented which could resolve the issue of whether the force exercised was disproportionate to the purported aggressive behavior exhibited by Plaintiff.  The request for entry of summary judgment on the basis that the record establishes that a viable excessive force claim has not been set forth will be denied.

## Heck

Defendants' third argument contends that since Plaintiff's misconduct hearing resulted in the loss of good conduct time until the results of that proceeding have been invalidated or overturned via a grant of federal habeas corpus relief, his claims for monetary damages with respect to his allegations of excessive force, false testimony, and denial of due process by DHO Bittenbender are barred under Heck v. Humphrey, 512 U.S. 477 (1994).  See Doc. 14, p. 8.

---

2.  (...continued)
Supp. 1192,1198 (W.D. Pa. 1993).

Inmates challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus petition. Preiser v. Rodriquez, 411 U.S. 475 (1975). The United States Supreme Court in Edwards v. Balisok, 520 U.S. 641, 646 (1997), concluded that a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a civil rights action. Id. at 646. It is undisputed that Plaintiff was issued a misconduct as a result of the events of December 2, 2010. Following a disciplinary hearing, he was found guilty of the charges and received sanctions which included a loss of good conduct time.

In Heck, the Supreme Court ruled that a constitutional cause of action for damages does not accrue "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid", until the Plaintiff proves that the "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The Third Circuit Court of appeals has found that Heck applies to challenges to parole decisions. See Aldoff v. Fisher, No. 00-2914, slip op. (3d Cir. June 28, 2001). Heck has also been deemed applicable to a claim that a sentence was improperly increased by

correctional officials.   See Sharp v. Lavan, No. 02-4535, slip op. (3d Cir. June 19, 2003).

Hill's claims that the Defendants fabricated testimony and the DHO improperly relied upon said evidence during an institutional disciplinary hearing which resulted in the loss of good time credits is clearly attacking the length of his federal sentence.   As a result, under Heck the only appropriate way for Hill to initially challenge those disciplinary proceedings is via a properly filed habeas corpus petition.   If successful in that endeavor, Plaintiff may then seeks monetary damages via a civil rights action.

Consequently, Hill's pending Bivens claims of falsified misconduct hearing testimony and denial of due process by DHO Bittenbender are clearly premature because he cannot maintain a cause of action for unlawful imprisonment until the basis for that imprisonment is rendered invalid via a federal habeas corpus petition.

With respect the assertions of excessive force, the Defendants claim that necessary minimal force was properly used in response to the aggressive behavior underlying Hill's misconduct charge, i.e., when the prisoner charged the cell door.   Thus, to accept Defendants' argument this Court would have to conclude that Plaintiff committed the misbehavior which is the basis for the challenged misconduct charge.

Similarly, Plaintiff asserts that during the relevant time period his behavior was compliant and there was no need for the use

of force.   Therefore, accepting the Plaintiff's version of the
facts would require a finding by this Court that Hill did not
commit the actions underlying the misconduct charge.   Moreover,
consideration of the claims of excessive force would necessarily
require a finding as to the lawfulness of Hill's disciplinary
proceedings and as such disposition of those allegations is clearly
precluded under Heck.

        In conclusion, in accordance with the mandates of Heck,
summary judgment will be granted with respect to Plaintiff's
allegations of excessive force, false testimony, and denial of due
process.

**Medical Treatment**

        Plaintiff's remaining claim is that PA Alama denied him
needed treatment following the December 2, 2010 incident.
According to the Complaint, Hill suffered loosened teeth, neck and
back pain, and blurred vison.   He also purportedly incurred
swelling and wounds because the ambulatory restraints were applied
too tightly.

        Defendants contend that there is absolutely no evidence in
the record to establish that there was deliberate indifference to a
serious medical need.   See Doc. 14, p. 14.   They note that "there
was no evidence of the types of injuries he describes in his
complaint."   Id. at p. 16.   In support of their argument Defendants
have submitted portions of Plaintiff's relevant institutional
medical records.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).  In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.  See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).  In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347.  "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

13

With respect to the serious medical need requirement, it is apparent that the cuts and bruises allegedly suffered by Plaintiff following his December 2, 2010 placement in ambulatory restraints were not of such magnitude as to satisfy the serious medical need requirement.[3]  See Wesson v. Igelsby, 910 F. 2d 278, 284 (5th Cir. 1990)(swollen wrists not a serious medical need); Price v. Engert, 589 F. Supp.2d 240, 246 (W.D.N.Y. 2008)(wrist and hand injuries do not satisfy the serious medical need requirement).

Hill also claims that he suffered loosened teeth, blurred vison, neck and back pain as a result of the December 2, 2010 use of force by correctional staff.  There is no claim by Hill that any of those alleged injuries ever required any actual medical or dental treatment, or resulted in any type of permanent harm. Moreover, Plaintiff has not come forth with any facts which could establish that his alleged neck and back pain constituted anything more then temporary discomfort.[4]

Defendants have submitted copies of Plaintiff's relevant medical records which provide that a timely post-incident medical assessment revealed that the prisoner complained of neck and back pain and was having breathing difficulties as a consequence of the use of chemical spray.  The breathing condition was timely addressed and resolved via application of Hill's prescribed inhaler

_____

3.  It is noted that after being placed in restraints, Plaintiff was examined by a member of the prison's medical staff who determined that the prisoner had adequate circulation.

4.  There is clearly no factual support for Plaintiff's bald claim of having suffered massive head injuries.

14

and instructions from the attending medical staff.  The only other injuries actually noted in the medical records were two brush burn type abrasions on Plaintiff's back which by themselves do not satisfy the serious medical need requirement.  Based on those facts, it is the conclusion of this Court that Hill's altercation related injuries may also not satisfy the serious medical need requirement of <u>Estelle</u>.

     With respect to the subjective deliberate indifference component of <u>Estelle</u>, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." <u>Farmer v. Brennan</u>, 511 U.S. 825, 841 (1994).  A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  <u>Estelle</u>, 429 U.S. at 106.

     When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.  <u>See</u> <u>Durmer v. O'Carroll</u>, 991 F.2d 64, 69 (3d Cir. 1993).  It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.  <u>See</u> <u>id</u>.  However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented.  <u>See</u> <u>id</u>.; <u>Ordonez v. Yost</u>,

15

289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").

Based upon a liberal consideration of Plaintiff's allegations given the fact that the undisputed medical records establish that he was provided with timely medical care there are simply no facts presented which could establish that Defendant Alama failed to diagnose or treat any serious medical need.  This is clearly not a situation where Plaintiff was not provided with medical attention. There is also no allegation by Hill that he was subsequently diagnosed by any medical professional with having any need for treatment stemming from the events of December 2, 2010. At best, Hill's allegations represent his disagreement with the quality of the medical care provided to him, claims which are not actionable in a civil rights action.  See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)(medical negligence does not expose a defendant to liability under § 1983).  Simply put, "[a]llegations of negligent treatment are medical malpractice claims, and do not trigger constitutional protections." Whooten v. Bussanich, No. 07-1441.

**Conditions of Confinement**

Plaintiff also contends that his placement in ambulatory restraints for approximately twenty-four (24) hours constituted an unconstitutional condition of confinement.  Defendants conclude that during the several hours that he was in restraints, the Plaintiff was not subject to unconstitutional conditions of

confinement.  <u>See</u> Doc. 14, p. 13.  They further claim entitlement to qualified immunity.

As previously mentioned, the United States Supreme Court, in <u>Farmer</u> described the standard for determining deliberate indifference as follows:

> [A] prison official cannot be found liable under the Eighth Amendment ... unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

<u>Farmer</u>, 511 U.S at 837. Thus, to succeed on such a claim, the prisoner must show: (1) that he was incarcerated under conditions posing a substantial risk of serious harm; (2) that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists"; (3) that the defendant actually drew this inference; and (4) that the defendant deliberately disregarded the apparent risk. <u>Id</u>.

The United States Supreme Court in <u>Sandin v. Conner</u>, 515 U.S. 472, 480-84 (1995), reasoned that "[d]iscipline by prison officials in response to a wide range of misconduct" is expected as part of an inmate's sentence.  <u>Id</u>. at 485.  The Third Circuit Court of Appeals applying <u>Sandin</u> has  found no merit in a procedural due process claim presented regarding disciplinary custody placement. <u>See</u> <u>Torres v. Fauver</u>, 292 F.3d 141, 150-51 (3d Cir. 2002)(because prisoners can reasonably anticipate transfer to disciplinary custody, placement in segregation as a disciplinary sanction did not implicate a protected liberty interest).

In <u>Fuentes v. Wagner</u>, 206 F.3d 335 (3d Cir. 2000) the Third Circuit Court of Appeals addressed a claim involving the placement of a prisoner in a restraint chair for eight (8) hours following a disturbance.  The Court found that those circumstances did not constitute cruel and unusual punishment.  A subsequent ruling, <u>Camp v. Brennan</u>, 54 Fed. Appx. 78, 81 (3d Cir. 2002) similarly concluded that the restrain of a prisoner on a table for two days while shackled and clothed only in a blanket did not constitute an Eighth Amendment violation.

Following those decisions, the United States Supreme Court handed down its decision in <u>Hope v. Pelzer</u>, 536 U.S. 730, 737-38 (2002) wherein it recognized that handcuffing an inmate to a hitching post for seven hours in a standing position, with his shirt off, subject to sunburn and scorching heat, without water or bathroom breaks while subject to taunting by correctional officers presented an Eighth Amendment violation.  During the one day period, medical records submitted by defendants show that Hill's restraints and his vital signs were regularly monitored.  Thus, he was not subject to the extreme conditions presented in <u>Hope</u>.

Qualified immunity is an affirmative defense which must be pleaded by the defendant official.  <u>Verney v. Pennsylvania Turnpike Comm'n</u>, 881 F. Supp. 145, 149 (M.D. Pa. 1995).  In <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), the United States Supreme Court held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Id. at 818; Sherwood v. Mulvihill, 113 F.3d 396, 398-99 (3d Cir. 1997); Showers v. Spangler, 957 F. Supp. 584, 589 (M.D. Pa. 1997).  It has also been held that "qualified immunity is coextensive for suits brought against state officials under 42 U.S.C. § 1983 (1982), and for suits brought directly under the Constitution against federal officials." People of Three Mile Island v. Nuclear Regulatory Commissioners, 747 F.2d 139, 144 n.9 (3d Cir. 1984) (citing Butz v. Economou, 438 U.S. 478, 504 (1978)).

The United States Supreme Court in Saucier v. Katz, 533 U.S. 194 (2001), subsequently established a two part test for analyzing qualified immunity claims.  See also Curley v. Klem, 298 F.3d 271 (3d Cir. 2002); Bennett v. Murphy, 274 F.3d 133 (3d Cir. 2002). The initial inquiry in a qualified immunity examination is whether "the facts taken in the light most favorable to the plaintiff show a constitutional violation." Bennett, 274 F.3d at 136.  The second prong requires a determination as to whether the constitutional right at issue was clearly established.  If so, then a court must inquire as to "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.  A determination that the conduct violated a clearly established constitutional right precludes the granting of qualified immunity.

Assuming that Hill satisfied the first prong of Saucier, Defendants are nonetheless entitled to qualified immunity under the second prong of Saucier, which requires that "a right is clearly

established if it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted." Jones v. City of Jersey City, 2002 WL 1877036 *1 (3d Cir. 2002).  Courts considering a request for qualified immunity must ask if a reasonable officer would have understood that his actions were prohibited. Bennett, 274 F.3d at 136.  Under the standards developed in Jones and Bennett, it must be shown that the officer knew the constitutional right existed, ignored the right, and deliberately acted in violation of that right.

There are relatively few post-Hope cases dealing with placement in ambulatory restraints. See Womack v. Smith, 2011 WL 819558 * 13 (M.D. Pa. March 2, 2011).  Many of those cases such as Womack dealt with far more aggravated circumstances where prisoners were kept in restraints for a prolonged period of time.

However, other post-Hope decisions have indicated that a short term placement in ambulatory restraints approximate to the pending factual circumstances does not rise to a constitutional violation. See Holley v. Johnson, 2010 WL 2640328 (W.D. Va. June 30, 2010); Barker v. Goodrich, 2010 WL 55719 *5 (S.D. Ohio Jan. 4, 2010).  Based upon those holdings, as well as the prior pre-Hope decisions of Fuentes and Camp this is simply not a case where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201.

While the placement of Hill in ambulatory restraints could be viewed as unconstitutional conditions of confinement, there is

no factual support for a finding that the correctional officers knew or that a reasonable officer would have realized the challenged conduct was unlawful as contemplated under Saucier. This is simply not a case where the allegations asserted could support a conclusion that a reasonable officer would have realized that his actions were constitutionally prohibited.  Defendants' request for qualified immunity will be granted.  An appropriate Order will issue.[5]

> S/Richard P. Conaboy
>
> RICHARD P. CONABOY
> United States District Judge

DATED: SEPTEMBER 5, 2012

---

5.    Of particular note and concern is the fact that the Plaintiff here, David E. Hill, filed another claim (Hill v. Lappin, Civil No. 3:11-CV-319) containing almost identical allegations, although naming some different parties on a different occasion.

Plaintiff's earlier action alleged that on August 31, 2010, due to his disagreement to be housed with an inmate named Cole, he refused an order by Lt. C. Scampone to back away from his cell door to be handcuffed.

During an ensuing cell extraction, the Plaintiff claimed that his head and neck were twisted and that he suffered injury due to his placement in overly tight ambulatory restraints.  In the first action, there was also an allegation that the Plaintiff Hill was issued a meritless misconduct charge and denied adequate medical care by P.A. Alama.

A Memorandum and Order dismissing the previous action was filed on
March 15, 2012.